```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA
```

WESTERN-SOUTHERN LIFE ASSURANCE CO.        CIVIL ACTION

VERSUS                                     NO: 09-3222

DWANDA PERRILLOUX &                        SECTION: R
SUCCESSION OF TORREY SANDERS


**ORDER AND REASONS**

In this insurance coverage dispute, defendant-in-interpleader and counter-claimant Dwanda Perrilloux moves for summary judgment seeking to recover accidental death benefits under Policy No. W45543769. Because the Court finds that Torrey Sanders' death was "accidental," and there is no evidence that his death resulted from the commission or attempted commission of a felony or from taking or using any narcotic or drug, Perrilloux is entitled to summary judgment.

**I.   BACKGROUND**

On March 3, 2000, Western-Southern Life Assurance Company issued a life insurance policy, Policy No. W45543769, to Torrey Sanders with $50,000 in coverage.[1] Dwanda Perrilloux was listed as the sole beneficiary.[2] The policy also contained an

---

[1] R. Doc. 1-2, Ex. 1.

[2] *Id.*

accidental death rider in the amount of $50,000.[3]

On March 9, 2008, Sanders went to his grandmother's house to retrieve an automobile.[4] As Sanders approached the car, an unidentified individual came out from a wooded area, approached Sanders and shot him in the chest.[5] Sanders died as a result of the gunshot wound.[6] Sanders was found at the scene with $5119.00 and a clear plastic bag containing a "green vegetable matter."[7]

On April 6, 2009, Western-Southern brought this interpleader action acknowledging that $50,000 was due under the insurance policy, but asked the Court to determine whether Perrilloux was entitled to the proceeds.[8] Western-Southern denied, however, that any accidental death benefits were due under the policy, alleging that Sanders was killed during an illegal narcotics transaction, and was taking and/or using narcotics.[9] Specifically, Western-Southern cited policy provisions excluding

---

[3] *Id.*

[4] R. Doc. 49-5 at 2.

[5] *Id.*; R. Doc. 1-2, Ex. 3.

[6] R. Doc. 49-2 at 4.

[7] R. Doc. 1-2, Ex. 3.

[8] R. Doc. 1. On November 10, 2009, the Court granted Perrilloux's partial motion for summary judgment, holding that Perrilloux was entitled to the insurance proceeds. R. Doc. 24. On November 19, 2009, the Court released the funds deposited in the registry of the court to Perrilloux. R. Doc. 26.

[9] R. Doc. 1 at 4; R. Doc. 14 at 3.

payment under the accidental death rider if the insured's death resulted from the commission or attempted commission of a felony, or from taking any hallucinogen, narcotic or drug.[10]

Perrilloux now moves for summary judgment asserting that she is entitled to recover benefits under the accidental death rider. Western-Southern does not oppose the motion.

**II.   LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for

---

[10]   R. Doc. 1 at 3-4; R. Doc. 14 at 2-3; R. Doc. 1-2, Ex. 1.

summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith ex rel. Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir.

1988), *cert. denied*, 488 U.S. 926 (1988).

**III. DISCUSSION**

A claimant seeking to recover under an accidental death policy or provision carries the initial burden of establishing that the predominant cause of the insured's death was "accidental." *Fiffick v. Econ-O-Check Corp.*, 85 F. App'x 16, 20-21 (5th Cir. 2004); *see also Dugas v. Travelers Ins. Co.*, 785 F.2d 550, 551 (5th Cir. 1986) (quoting *Johnson v. Nat'l Life & Accident Ins. Co.*, 331 So. 2d 87, 88 (La. Ct. App. 1976)) ("It is the burden of the plaintiff initially to establish that the death of the insured was 'accidental.'"). Once the insured satisfies that burden, the burden shifts to the insurer to show by a preponderance of the evidence that it is not liable because of an exclusionary clause in the policy. *Dugas*, 785 F.2d at 551.

The accidental death rider in this case provides that Western-Southern was required to pay Perrilloux a $50,000 accidental death benefit upon receiving proof that: (1) the insured died as a "direct result, independent of all other causes, of accidental bodily injury"; (2) the injury happened after the insured's first birthday and while the policy was in force; (3) the insured died within 90 days of the injury and while the policy was in force; and (4) all other terms of the

rider were met.[11]  The police report and coroner's report establish that Sanders died after his first birthday and within 90 days of his injury.[12]  The only issue, therefore, is whether Sanders' death was "accidental" under the policy.

Under Louisiana law, "[i]t is well established that where the insured is intentionally injured by another, and the injury is not the result of misconduct or an assault by the insured, but is unforeseen, in so far as he is concerned, *the injury is accidental* within the meaning of an accident policy." *Cuititto v. Metro. Life Ins. Co.*, 185 La. 161, 164 (1936) (citations omitted) (emphasis in original).  An insured's death, therefore, is "accidental" when the insured is killed by a third party.  *See Johnson*, 331 So. 2d at 88-89 (holding plaintiff established a prima facie case of "accidental death" when the parties stipulated that the insured died from a gunshot wound because "[t]his is the antithesis of a natural cause"); *Willis v. Willis*, 287 So. 2d 642, 645 (La. Ct. App. 1974) (holding insured met an "accidental death" when he was shot three times by a third party); *Haynes v. Modern Woodmen of Am.*, 135 So. 2d 548, 549 (La. Ct. App. 1962) (holding that decedent's death was "accidental" when he was shot four times by a third party and died almost immediately as a result).  Here, Perrilloux has submitted the

---

[11]  R. Doc. 1-2, Ex. 1.

[12]  R. Doc. 1-2, Ex. 3; R. Doc. 49-2.

coroner's report as evidence that Sanders died as a result of a gunshot wound to the chest.[13]  There is no evidence to suggest that Sanders committed suicide.  *See Johnson*, 331 So. 2d at 88-89 (holding plaintiff established prima facie case of "accidental" death because "the law presumes the love of life and negates suicide, of which no evidence was offered").  There is also no evidence that Sanders was an initial aggressor in the events surrounding his death.  *Compare Dugas*, 785 F.2d at 552 (holding district court erred in granting summary judgment when there were material fact issues as to whether the insured was the aggressor in the incident causing his death and thus whether his death was accidental).  Based on the evidence submitted, the Court holds that Perrilloux has met her burden in establishing that Sanders' death was "accidental."

The burden, therefore, shifts to the insurer to show by a preponderance of the evidence that it is not liable because an exclusionary clause in the policy is applicable.  *Dugas*, 785 F.2d at 551.  In its complaint and its answer to Perrilloux's counterclaim, Western-Southern cites the following policy exclusions:

> [Western-Southern] will not pay any amount under this rider if the Insured's injury or death results, directly or indirectly, from any of the following risks:
> ...

---

[13]   R. Doc. 49-2.

> (4) Commission of an assault or felony or an attempt to commit an assault or felony;
> ...
> (7) Taking or using any hallucinogen, narcotic or drug except on the advice of a licensed physician.[14]

Specifically, Western-Southern alleges that at the time of his death, Sanders was participating in an illegal narcotics transaction, possessed illegal narcotics, and was taking and/or using narcotics.

The Court finds that there is no evidence that Sanders' death was a result of an illegal drug transaction. Western-Southern has failed to oppose Perrilloux's motion for summary judgment and "may not rest on [its] unverified complaint." *Scott v. DMN Inc.*, 31 F. App'x 836, 2002 WL 243295, at *1 (5th Cir. 2002). Although there is evidence that $5119.00 and unidentified drugs were found at the scene, Perrilloux has submitted the testimony of the two officers involved in the investigation. Detective Burke testified that Sanders was not involved in a drug transaction at the time of his death:

> Q: In your considerable experience was this a drug deal -- was a drug deal occurring between these two people in that evening?
> A: Again, according to the witnesses, it never got close enough to -- the shooter came out shooting, so it

---

[14] R. Doc. 1 at 3-4; R. Doc. 14 at 2-3; R. Doc. 1-2, Ex. 1. The Court notes the absence of an exclusionary clause for "death caused by the intentional act of the insured, *or any other person*." *Cf. Chambers v. First Nat'l Life Ins. Co. of New Orleans*, 253 So. 2d 636, 637-38 (La. Ct. App. 1971) (discussing policy exclusion for death caused by the intentional act of any person).

> wasn't -- there's no doubt in my mind, because we found drugs at the scene too, so there's no doubt in my mind that somebody wanted him dead. It wasn't a drug transaction happening right there.
> Now maybe something had happened earlier where -- and, again, that's just speculation, you know.  If somebody was mad at him for whatever he had done and it could have been stemming from drugs, but whatever it was wasn't happening right there. It just was the shooting that happened right there.
> ...
> Q:  You've got no evidence that this murder was the product of some kind of previous drug transaction from the present day or previous - -
> A: No, no.[15]

In addition, Detective Robert Hay testified that the likely motive behind the killing was a robbery attempt.[16]  There is no evidence that Detective Hay found that Sanders was involved in a drug transaction at the time of his death.  Accordingly, the Court finds that there is no evidence that Sanders' death was the result of an illegal drug transaction.

Additionally, the Court finds that there is insufficient evidence in the record to create a material fact issue that Sanders committed a felony drug possession offense.[17]  The only evidence in the record is Detective Burke's testimony that unidentified drugs were found at the scene, and a statement in the police report that Sanders was found holding a clear plastic bag containing a "green vegetable matter."  But, there is no

---

[15]  R. Doc. 49-3 at 3-4.

[16]  R. Doc. 49-4 at 1.

[17]  R. Doc. 1-2, Ex. 3.

evidence that any testing was performed to identify and confirm the "green vegetable matter" as drugs. Further, even if the substance found at the scene was marijuana, the Court finds that there is insufficient evidence that the quantity possessed would constitute a felony drug offense. Under Louisiana Revised Statute Section 40:966(E)(1), an individual convicted for the first time for possession of marijuana shall be imprisoned in a parish jail for not more than six months. La. Rev. Stat. § 40:966(E)(1). Under this provision, therefore, a first conviction for simple possession of marijuana is a misdemeanor. *See* La. Rev. Stat. § 14:2(A)(4) (defining "felony" as "any crime for which an offender may be sentenced to death or imprisonment at hard labor."); *State ex rel. D.R.*, 2010-0405, p. 18 (La. App. 4 Cir. 10/13/10); 50 So. 3d 927, 937 ("Because an adult offender could not be sentenced to hard labor upon conviction of simple possession of marijuana, it is a misdemeanor-grade delinquent act."). Although there are exceptions to Section 40:966(E)(1) if the offender possesses certain quantities of marijuana specified in Section 40:966(F), there is no evidence in the record regarding the quantity of marijuana Sanders possessed. The parties also have submitted no evidence regarding Sanders' criminal history. Accordingly, based on the evidence submitted, the Court finds that there exists no material fact issues as to whether Sanders' death resulted from the commission or attempted

commission of a felony.

The Court also finds that there is no evidence that at the time of his death, Sanders was taking or using illegal drugs. As stated above, there is no evidence that the "green vegetable matter" Sanders was holding was tested and confirmed to be marijuana. More importantly, there is no evidence that at the time of his death, Sanders was *taking or using* any hallucinogen, narcotic or drug. The Court, therefore, finds that this exclusionary clause is not applicable.

Accordingly, because Perrilloux has established Sanders' "accidental death," and there is no evidence to support the applicability of the exclusions cited by Western-Southern, the Court holds that Perrilloux is entitled to summary judgment.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS Perrilloux's motion for summary judgment.

New Orleans, Louisiana, this __13th__ day of May, 2011

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE